UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA



| MICHAEL H. PRICE and ROGER K. FREY | ) |
|---|---|
| Plaintiffs | ) ) Civil Action No. 97-975 (RCL) |
| v. | ) |
| SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA | ) FILED |
|  | ) AUG 2 4 2000 |
| Defendant | ) NANCY MAYER WHITTINGTON, CLERK U.S. DISTRICT COURT |

## MEMORANDUM OPINION

This matter comes before the court upon a complaint filed by plaintiffs Michael H. Price and Roger K. Frey against defendant Socialist People's Libyan Arab Jamahiriya ("Libya") seeking general, specific, and compensatory damages in excess of twenty million dollars for each plaintiff. Plaintiffs allege that they were taken hostage and subjected to physical and mental torture in violation of 28 U.S.C. § 1605(a)(7), as amended, 1996. For the following reasons, Libya's Motion to Dismiss will be denied.

## I. Facts

Plaintiffs are citizens of the United States. On March 19, 1980, they were accused of taking photographs for illegal purposes and detained in a Libyan prison pending trial. Plaintiffs allege that during their 105-day incarceration they were clubbed and beaten by the prison guards,

1

mentally and verbally abused during interrogations, subjected to crowded and unsanitary conditions, and denied adequate nutrition and medical care. Price and Frey further allege that after being acquitted of all charges, Libya refused to allow plaintiffs to recover their passports or leave the country for sixty days.

On May 7, 1997, plaintiffs brought this suit against Libya. Price and Frey assert in their complaint that the Libyan government's sponsorship of their abusive treatment constitutes "acts which governments do not normally and cannot lawfully undertake," thereby waiving the government's right to sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"). See Plaintiffs' Complaint ¶ 10.

Libya responded by filing a Motion to Dismiss on January 21, 1998, claiming 1) insufficient service of process, 2) failure to provide a reasonable opportunity to arbitrate, 3) lack of personal and subject matter jurisdiction, and 4) failure to state a claim upon which relief can be granted. This court denied defendant's motion without prejudice, ruling that plaintiffs' method of serving process was inadequate but sua sponte granting a 60-day extension for plaintiffs to perfect service of process. See Memorandum and Order (filed September 24, 1999). In its opinion, this court declined to address the remaining issues raised by Libya, ruling that any adjudication would be premature in the absence of sufficient service.

After plaintiffs properly effected service of process, defendant renewed its Motion to Dismiss on February 9, 2000, contending that 1) Congress' grant of subject matter jurisdiction under § 1605(a)(7) is invalid, 2) this court's exercise of personal jurisdiction over the defendant is unconstitutional, and 3) plaintiffs fail to state a claim upon which relief can be granted. This court now considers each of these arguments in turn.

2

## II. Argument

### A. Subject matter jurisdiction

Defendant does not dispute that § 1605(a)(7) of the FSIA confers subject matter jurisdiction on United States courts "to adjudicate money damages against designated states for personal injury or death caused, inter alia, by acts of torture and hostage taking." See Defendant's Motion to Dismiss (filed February 9, 2000). However, Libya argues that this grant of subject matter jurisdiction in the statute is invalid for three reasons: 1) the passive personality principle upon which subject matter jurisdiction is based is disfavored by the executive and judicial branches of this government as well as international law, 2) Congress lacks the constitutional authority to grant subject matter jurisdiction pursuant to § 1605(a)(7), and 3) Congress' grant of subject matter jurisdiction violates the doctrine of separation of powers.

1. The "passive personality" principle

The passive personality principle forms the underpinnings of Congress' grant of subject matter jurisdiction under the FSIA: "Under the passive personality principle, a state may punish non-nationals for crimes committed against its nationals outside of its territory, at least where the state has a particularly strong interest in the crime." United States v. Yunis, 924 F.2d 1086, 1090 (D.C. Cir. 1991). Defendant notes that subject matter jurisdiction is created under the passive personality principle simply by virtue of the plaintiffs' nationality. Libya argues at length in its Motion to Dismiss that the executive branch, American courts, and international law have historically frowned upon legislative grants of subject matter jurisdiction when jurisdictional contacts with the United States depend solely on plaintiffs' American citizenship.

Yet this court finds that this jurisdictional argument lacks merit in light of recent judicial

rulings in this circuit. In United States v. Yunis, the defendant alleged the same jurisdictional infirmities under the passive personality principle that Libya presents in this case. The Court of Appeals in Yunis rejected this line of argument, finding that "American courts are obligated to give effect to an unambiguous exercise by Congress of its jurisdiction to prescribe even if such an exercise would exceed the limitations imposed by international law." Id. at 1091 (quoting Federal Trade Comm'n v. Compagnie de Saint-Gobain-Pont-a-Mousson, 636 F.2d 1300, 1323 (D.C.Cir.1980)). In the absence of constitutional violations, the decision in Yunis accords dispositive weight to acts of Congress. Thus, the authorities cited by defendant that preceded the 1996 amendments to the FSIA do not provide a basis for this court to diverge from the holding in Yunis. As the Court of Appeals concluded: "The statute in question reflects an unmistakable congressional intent, consistent with treaty obligations of the United States, to authorize prosecution of those who take Americans hostage abroad no matter where the offense occurs or where the offender is found. Our inquiry can go no further." Id. at 1091.

2. The constitutionality of Congress' grant of subject matter jurisdiction under the FSIA

The Congress of the United States is a legislature of enumerated and specific powers, and can only act in accordance with the limitations imposed by the Constitution. Marbury v. Madison, 5 U.S. 137, 176 (1803). The Supreme Court ruled in Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480 (1983) that the Constitution imposes no such limitation on the ability of Congress to waive the sovereign immunity of foreign countries: "Foreign sovereign immunity is a matter of grace and comity on the part of the United States, and not a restriction imposed by the Constitution." Id. at 486. The Supreme Court subsequently found that Congress is uniquely positioned to determine the conditions under which foreign countries should be subjected to the

jurisdiction of American courts: "By reason of its authority over foreign commerce and foreign relations, Congress has the undisputed power to decide, as a matter of federal law, whether and under what circumstances foreign nations should be amenable to suit in the United States." Id. at 492. This conclusion required an explicit finding by the Court that the Constitution grants Congress the power to create subject matter jurisdiction for federal courts through the FSIA: "The jurisdictional grant is within the bounds of Article III, since every action against a foreign sovereign necessarily involves application of a body of substantive federal law, and accordingly 'arises under' federal law, within the meaning of Article III." Id. at 497. Accordingly, this court rejects defendant's attack on the constitutionality of this court's subject matter jurisdiction.

3. Separation of Powers

Defendant argues that the 1996 amendments to the FSIA are an unconstitutional delegation of legislative powers to the executive branch since they authorize the Secretary of State to determine which foreign countries are amenable to suit in the United States under § 1605(a)(7). For purposes of this case, however, this court need not address the constitutionality of this delegation of power since the decision to subject Libya to the jurisdiction of American courts was made by Congress and not the executive branch:

> The decision to subject Libya to jurisdiction under §1605(a)(7) was manifestly made by Congress itself rather than by the State Department. At the time that § 1605(a)(7) was passed, Libya was already on the list of state sponsors of terrorism. No decision whatsoever of the Secretary of State was needed to create jurisdiction over Libya for its alleged role in the destruction of Pan Am 103. That jurisdiction existed the moment that the AEDPA amendment became law. Rein v. Socialist Libyan Arab Jamahiriya, 162 F.3d 748, 764 (2nd Cir. 1998).

## B. Personal jurisdiction

Defendant argues that this court cannot constitutionally acquire in personam jurisdiction over Libya since the country lacks sufficient minimum contacts with the United States: "[Libya] has no presence in the United States, does not conduct any business in the United States either directly or through an agent, and has no other affiliating contacts with the United States." Defendant's Motion to Dismiss (filed February 9, 2000). Citing substantial case law, Libya further argues that the American citizenship of the plaintiffs by itself is insufficient to establish the requisite minimum contacts.

However, this court observes that the process of obtaining personal jurisdiction under the FSIA does not follow the traditional approach outlined in International Shoe Co. v. Washington, 326 U.S. 310 (1945). As the Supreme Court observed in Argentine Republic v. Amerada Hess Shipping Corp., 109 S.Ct. 683 (1989), "the text and structure of the FSIA demonstrate Congress' intention that the FSIA be the sole basis for obtaining jurisdiction over a foreign state in our courts." Id. at 688. 28 U.S.C. § 1330 describes the conditions under which courts may obtain in personam jurisdiction over foreign countries:

> (a).  The district courts shall have original jurisdiction of any nonjury civil action against a foreign state as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity.
>
> (b)  Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.

The statute itself and subsequent caselaw demonstrate that the process of establishing personal jurisdiction over a foreign country is sensitive to the particular sovereign immunity exception invoked by the plaintiffs. In Rein v. Socialist People's Libyan Arab Jamahiriya, 162

F.2d 748 (2nd Cir. 1998), Libya raised the same personal jurisdiction arguments that have been submitted to the court in this case. Significantly, the Court of Appeals ruled in Rein that an independent finding of minimal contacts is not required for establishing personal jurisdiction over a defendant when subject matter jurisdiction arises pursuant to §1605(a)(7) of the FSIA: "The elements of §1605(a)(7), unlike those of the commercial activities exception, do not entail any finding of minimum contacts." Id. at 761. Indeed, cases under the torture provision are unique in that courts automatically obtain personal jurisdiction over the foreign country whenever the requirements of subject matter jurisdiction and service of process are satisfied:

> The two kinds of jurisdiction - subject matter and personal - are interrelated under the FSIA. Pursuant to that statute, there is personal jurisdiction over foreign sovereigns with respect to all claims (a) over which there is subject matter jurisdiction, and (b) as to which process has been properly served. In other words, the statute makes both service of process and subject matter jurisdiction elements of personal jurisdiction over foreign sovereigns. Id. at 759.

This unique method for establishing personal jurisdiction under § 1605(a)(7) reflects Congress' understanding that sufficient nexus with the United States exists by definition when the foreign country is accused of torturing an American citizen overseas. Thus, notwithstanding the arguments of defendant, this court finds that this process for obtaining personal jurisdiction does not undermine the Fifth Amendment's guarantee of due process, but is necessary to allow for the adjudication of claims arising under § 1605(a)(7). Accordingly, this court's exercise of personal jurisdiction over Libya is constitutional.

**C. Plaintiffs' causes of action**

According to Federal Rule of Civil Procedure 8(a)(2), a complaint need only contain "a

short and plain statement of the claim showing that the pleader is entitled to relief." In <u>Conley v. Gibson</u>, 355 U.S. 41 (1957), the Supreme Court interpreted this rule to mean that "a complaint shall not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Id</u>. at 45-46. Nonetheless, defendant argues for a Rule 12(b)6 dismissal of plaintiffs' complaint on grounds that plaintiffs fail to sufficiently allege a cause of action for 1) torture, and 2) hostage taking.

1. <u>Torture</u>

Defendant contends that plaintiffs fail to state a valid cause of action for torture since they do not allege in their complaint that the violence they suffered at the hands of the Libyan prison guards was committed "for the purpose of extracting information or a confession from them." <u>See</u> Defendant's Motion to Dismiss. However, this definition of torture employed by defendant is unduly narrow. Addendum 1 to defendant's motion concedes that the term "torture" in the 1996 amendment to the FSIA derives its meaning from the definition of torture in Section 3 of the Torture Victim Protection Act of 1991 ("TVPA"):

> The term "torture" means any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, <u>punishing that individual for an act that individual or a third person is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind.</u>" Section 3(b)(1), Torture Victim Protection Act of 1991. (Emphasis added).

Under this broader definition, this court finds that plaintiffs' allegations satisfy the

elements of torture as defined in the TVPA and adequately plead a cause of action for torture. First, plaintiffs allege that they were subjected to severe pain and suffering in the course of being "kicked, clubbed and beaten by the prison guards," and "interrogated and subjected to physical, mental and verbal abuse." Price and Frey also allege that they were within the Libyan government's custody at the time the alleged acts of torture occurred. Finally, their claim that they were singled out for their American citizenship properly alleges a discriminatory purpose in accord with the TVPA definition.

2. Hostage taking

Plaintiffs and defendant stipulate that the term "hostage taking" in the 1996 FSIA amendment derives its meaning from the definition of that term in Article 1 of the International Convention Against the Taking of Hostages:

> Any person who seizes or detains and threatens to kill, to injure or to continue to detain another person in order to compel a third party, namely, a State, an international governmental organization, a natural or juridical person or a group of persons, to do or abstain from doing any act as an explicit or implicit condition for the release of the hostage commits the offense of taking hostages within the meaning of this Convention.

By simply alleging that the circumstances of their confinement constitute hostage taking as defined by the statute, the plaintiffs satisfied the pleading requirements of Rule 8: "All the Rules [of Civil Procedure] require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Moreover, plaintiffs specifically claim that they were confined "for the purpose of demonstrating Defendant's support of the government of Iran which held hostages in the U.S. Embassy in Teheran, Iran." See Plaintiffs' Complaint.

Implicit in plaintiffs' complaint is the allegation that Libya incorporated Iran's motive for taking hostages at the American Embassy to detain and mistreat Price and Frey in Libya. Accordingly, this court finds that plaintiffs' allegations satisfy the elements of hostage taking as defined by the Convention and adequately plead a cause of action.

### III. Conclusion

This court finds that 1) Congress' grant of subject matter jurisdiction under § 1605(a)(7) is valid, 2) this court's exercise of personal jurisdiction over Libya is constitutional, and 3) plaintiffs state a valid cause for action for both torture and hostage taking. According, defendant's Motion to Dismiss will be denied.

A separate order shall issue this date.

_____
Royce C. Lamberth
United States District Court Judge

DATE: 8-24-00